UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GURINDER JOHAL personal representative of the Estate of Amarjeet Johal, DILJOT SEKHON personal representative of the Estate of Amarjit Sekhon, JASPREET SEKHON personal representative of the Estate of Jasvinder Kaur, MARY CAROL WEISERT, personal representative of the Estate of John Weisert, MATTHEW D. ALEXANDER personal representative of the Estate of Karlie Smith, <br><br>      Plaintiffs, <br><br>v. <br><br>FEDEX CORPORATION, FEDEX GROUND PACKAGE SYSTEM, INC., FEDERAL EXPRESS CORPORATION, FEDEX CORPORATE SERVICES, INC., SECURITAS SECURITY SERVICES, USA, <br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 1:22-cv-00716-JRS-MG ) ) ) ) ) ) ) ) |

**Order on Motions to Dismiss**

## I. Introduction

This case concerns the April 15, 2021, mass shooting at an Indianapolis FedEx facility. Five victims killed in that attack—Amarjeet Johal, Amarjit Sekhon, Jasvinder Kaur, John Weisert, and Karlie Smith—here, through their estates' personal representatives, bring wrongful death claims against their employer FedEx and against FedEx's security provider, Securitas.

Now before the Court are two motions to dismiss, (ECF Nos. 23, 38), both by FedEx, which assert, first, under Rule 12(b)(2), that this Court lacks personal jurisdiction over certain of FedEx's corporate guises and, second, under Rule 12(b)(6), that Indiana's Worker's Compensation Act provides Plaintiffs' only remedy, such that they have "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(2), 12(b)(6). The operative complaint is Plaintiffs' Amended Complaint. (ECF No. 16.)

## II. Legal Standard

### A. Rule 12(b)(2)

A Rule 12(b)(2) motion tests this Court's personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). At this stage, the Court will "take the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *NBA Properties, Inc. v. HANWJH*, No. 21-2909, 2022 WL 3367823, at *3 (7th Cir. Aug. 16, 2022) (quoting *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010)). However, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Id.* (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). The Court "may consider affidavits on the issue of personal jurisdiction; both parties' affidavits are accepted as true, and where they conflict, the plaintiff is entitled to resolution in its favor." *Id.* (citing *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020)).

B. Rule 12(b)(6)

"A Rule 12(b)(6) motion tests 'the legal sufficiency of a complaint,' as measured against the standards of Rule 8(a)." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (citing *Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015)). Rule 8(a) requires that the complaint contain a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "To meet this standard, a plaintiff is not required to include 'detailed factual allegations,'" but the factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss for failure to state a claim, courts "take all the factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, and draw all reasonable inferences in the plaintiff's favor, *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Courts need not, however, accept the truth of legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

That said, "the bar to survive a motion to dismiss is not high." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873 (7th Cir. 2022) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010)). "[A] plaintiff 'receives the benefit of imagination, so

3

long as the hypotheses are consistent with the complaint.'" *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (quoting *Twombly*, 550 U.S. at 563).

### III. Discussion

#### A. Personal Jurisdiction

FedEx argues that not all its divisions are subject to this Court's personal jurisdiction. (FedEx Br. Supp. 9, ECF No. 31.) As the caption of this case indicates, the FedEx business is divided into various separate corporations: Fedex Corporation (the parent company), FedEx Ground Package System, Inc. (the ground transport division), Federal Express Corporation (the express mail division), and Fedex Corporate Services, Inc. (a centralized administrative service for the other divisions). FedEx thus argues that *FedEx* does no business in Indiana; FedEx has never heard of Indiana; only *Ground* does business in Indiana; what Ground does in Indiana is its own affair. That argument is, of course, preposterous—but it might be valid as a point of corporate law. Because corporations are treated as separate legal entities, "as a general rule, the jurisdictional contacts of a subsidiary corporation are not imputed to the parent." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n.17 (7th Cir. 2003) (citing *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943–44 (7th Cir. 2000); *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000); *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999); *Szakacs v. Anheuser–Busch Cos., Inc.*, 644 F.Supp. 1121, 1125 (N.D. Ind.1986); *Anthem Ins. Cos., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1240 n. 17 (Ind. 2000)). It is therefore quite

possible that FedEx cannot ultimately be held to account for its subsidiaries' actions in Indiana.

Here, though, the Court rules on a 12(b)(2) motion, where, as described above, Plaintiffs get the benefit of the doubt.[1] *NBA Properties*, 2022 WL 3367823 at *3. In some cases, where subsidiaries are mere agents of the parent corporation's business, personal jurisdiction is appropriate against the out-of-forum parent. *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 541 (7th Cir. 1998) ("[A] corporation should not be able to insulate itself from the jurisdiction of the states in which it does business by the simple expedient of separately incorporating its sales force and other operations in each state."); § 1069.4 Application of Modern Jurisdictional Principles—Contacts by Related Entities, 4A Fed. Prac. & Proc. Civ. §1069.4 (4th ed.) (restating the law, collecting cases, and concluding "[t]he very nature of these often difficult issues makes their resolution extremely fact dependent."). The Court, then, heeds FedEx's affidavits on its corporate structure and its business operations in Indiana but holds that those affidavits are not dispositive on the issue of personal jurisdiction. Plaintiffs have alleged an entanglement between the various branches of FedEx sufficient to overcome the presumption of corporate separateness. Plaintiffs allege that FedEx's subsidiaries are "operating units" of the parent corporation, (Compl. ¶ 13, ECF No. 16), that FedEx devised and implemented the security plan at the Indianapolis Ground facility, (*id.* ¶ 15–16), that FedEx has a registered agent in Indiana for service of process, (*id.* ¶ 18),

---

[1] The plaintiffs' burden would increase were the Court to hold an evidentiary hearing on the issue. *Curry*, 949 F.3d at 392–93. Until then, plausibility suffices.

that FedEx Services provides "legal, finance, tax, treasury, accounting and investor services" to Ground, (*id.* ¶ 38), and that Services contracted for security at the Indianapolis Ground facility, (*id.* ¶ 41). Taken together, those allegations suffice to carry Plaintiffs' initial burden of demonstrating personal jurisdiction over FedEx, either directly by in-state contacts or indirectly by imputing Ground's Indiana contacts to FedEx's various divisions.

B. Sufficiency of Claim

The Indiana Worker's Compensation Act provides the exclusive remedy, under Indiana law, for employees injured by accidents at work. Ind. Code § 22-3-2-6. Cases within the scope of the Act are to be decided by the Indiana worker's compensation board. *Id.* § 22-3-1-2. Indiana state courts of general jurisdiction may not hear them. *Sims v. United States Fid. & Guar. Co.*, 782 N.E.2d 345, 349–50 (Ind. 2003). If a case brought in state court is found to be within the scope of the Act, the state court dismisses for lack of subject-matter jurisdiction. *Goetzke v. Ferro Corp.*, 280 F.3d 766, 778 (7th Cir. 2002). One might think, then, that if such a case is brought in federal court sitting in diversity, then the federal court should also dismiss for lack of subject-matter jurisdiction. It is not so. The Seventh Circuit, applying the axiom that state legislatures have no power to modify Congress' statutory grant of federal jurisdiction,[2] instructs that the federal court in such a case must instead dismiss for

---

[2] Perhaps distinguishing between intensional and extensional definitions could save both the learnèd axiom and the common-sense idea that the federal and state grounds for dismissal should match. Congress' grant of statutory jurisdiction in 28 U.S.C. § 1332 provides for federal jurisdiction over all "civil actions." "Civil actions" can be defined intensionally—that is, by their nature: as one knows a civil action by contrast with a criminal action. But "civil actions" can also be defined extensionally—that is, by listing examples: private nuisance,

6

failure to state a claim on which relief can be granted.³ *Id.* at 779 (citing *Beach v. Owens-Corning Fiberglas Corp.*, 728 F.2d 407, 409 (7th Cir. 1984)). The parties' dispute here, then, is addressed under Rule 12(b)(6).

FedEx argues that Plaintiffs have by their own allegations pled a worker's compensation case. *Cf. Summers v. Crossroads Galvanizing, LLC*, No. 4:21-CV-074-PPS-JEM, 2022 WL 3595014, at *3 (N.D. Ind. Aug. 22, 2022) (quoting *Perry v. Stizer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994) ("Where, as here, 'a plaintiff's own complaint recites facts demonstrating the employment relationship and its role in the injuries alleged,' the plaintiff carries the burden 'to demonstrate some grounds for taking the claim outside the Worker's Compensation Act.'"). Plaintiffs counter they have not, or at least that it is too early to say.

---

negligence, battery, and so forth. Changes to the intensional part of Congress' "civil action" provision are, as the axiom holds, unacceptable: thus state legislatures could not declare federal courts open to state criminal actions. But changes to the extensional part of "civil action" are acceptable, indeed routine: state legislatures modify the extensional limit of "civil actions" whenever they recognize a new civil cause of action, like negligent infliction of emotional distress or strict products liability. If, then, the worker's compensation exclusivity provision is deemed an acceptable extensional change over the sorts of civil actions available to federal litigants, it could be considered jurisdictional without running afoul of either the axiom or Congress' statutory command.

Ultimately, the problem distinguishing 12(b)(1) and 12(b)(6) here is a subset of the larger problem of ever distinguishing availability of jurisdiction and viability of cause of action. As a practical matter, the difference is usually clear. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). But goodness and being are intertwined; some cases are so bad they cease to be cases at all. *Id.*

³ The different grounds for dismissal have practical effects: the Court must decide jurisdiction first, but may assess subject-matter and personal jurisdiction in either order. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999). If state-law exclusivity provisions were jurisdictional, this Court could decide exclusivity first, where, as here, it presents an easier question, and so avoids difficulties with personal jurisdiction.

7

Under Indiana law, a claim is within the exclusive scope of the Worker's Compensation Act if the "employee's injury occurred by accident arising out of and in the course of employment." *Sims v. United States Fid. & Guar. Co.*, 782 N.E.2d 345, 349–50 (Ind. 2003); Ind. Code § 22-3-2-5. Indiana courts apply a three-element test: the injury must have been (1) "by accident" (2) "arising out of employment" and (3) "in the course of employment." *Clemans v. Wishard Mem'l Hosp.*, 727 N.E.2d 1084, 1086 (Ind. Ct. App. 2000). And while the application of that test "is fact-sensitive and depends upon the circumstances of each case, . . . if the facts pertinent to the question of liability are not in dispute . . . the question becomes one of law for the courts to decide." *Id.*

i. By Accident

Indiana courts take a plain language view of "by accident": "An injury is considered to be 'by accident' when the sufferer did not intend or expect that injury would, on that particular occasion, result from what he was doing." *Assocs. Corp. of N. Am. v. Smithley*, 621 N.E.2d 1116, 1121 (Ind. Ct. App. 1993). Or, more bluntly still, "the statutory term 'injury or death by accident' . . . means unexpected injury or death." *Evans v. Yankeetown Dock Corp.*, 491 N.E.2d 969, 975 (Ind. 1986). Random workplace shootings are "by accident." *Id.* In *Evans*, a man was drinking coffee at an employee break area, a few minutes before beginning his shift, when a coworker came up and shot him in a paranoid-delusional fit. *Id.* at 970. The Indiana Supreme Court found the case simple: "it [was] clear that [the man] did not intend or expect to

8

be injured or killed as he was drinking his coffee at the employees' eating area," so his death was "by accident." *Id.* at 975.

The Court finds this case closely analogous to *Evans*. The shooting here was, to all appearances, an act of random, senseless violence. Plaintiffs do not allege that FedEx intended the shooting. (Pls.' Resp. 5, ECF No. 59.) The victims certainly did not "intend or expect to be injured or killed" as they went about their workday routine. *Id.* The Court concludes that their deaths were "by accident" for the purposes of the Indiana Worker's Compensation Act.

ii. Arising Out of Employment

The remaining two elements both deal with the connection between the injury and the employment. "'Arising out of' and 'in the course of' are," nonetheless, "two separate and distinct elements: the 'in the course of' element refers to the time, place, and circumstances of the accident, while the 'arising out of' element refers to the causal connection between the accident and the employment." *Clemans*, 727 N.E.2d at 1086 (quoting *K-Mart Corp. v. Novak*, 521 N.E.2d 1346, 1348 (Ind. Ct. App.1988)).

An injury "arises out of employment" when "a causal nexus exists between the injury sustained and the duties or services performed by the injured employee." *Milledge v. Oaks*, 784 N.E.2d 926, 929 (Ind. 2003). That causal nexus "is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment, or when the facts indicate a connection between the injury and the circumstances under which the employment occurs." *Id.* (quoting *Wine–Settergren v. Lamey*, 716 N.E.2d 381, 389 (Ind. 1999)). There are three types

9

of risk "incidental to employment": "(1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) risks of neither distinctly employment nor distinctly personal in character." *Id.* at 930 (citing *Ind. Mich. Power Co. v. Roush*, 706 N.E.2d 1110, 1113 (Ind. Ct. App. 1999), *trans. denied.*; 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law 4–1 (2002)). Of those risks, categories one and three are within the scope of the Indiana Worker's Compensation Act; category two risks are excluded. *Id.* Assaults, "includ[ing] attacks by 'lunatics,'" are category three "neutral" risks. *Evans*, 491 N.E.2d at 975.

Indiana uses the "positional risk" doctrine to analyze neutral risks. *Milledge*, 784 N.E.2d at 932. Under the positional risk doctrine, "an injury arises out of the employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he was injured." *Id.* at 931 (quoting Larson, § 3.05, at 3–6). Thus, for neutral risks, the "arising out of employment" analysis collapses into the "in the course of employment" analysis: if the latter element is met, so is the former. *Id.*

The random shooting at issue here is a category three, neutral risk. *See Evans*, 491 N.E.2d at 975. Applying the positional risk doctrine, then, the resulting injuries will have "arisen out of" employment if and only if they were inflicted "in the course of employment."

### iii. In Course of Employment

An injury occurs "'in the course of employment' when it takes place within the period of employment, at a place where the employee may reasonably be, and while

the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto." *Thompson v. York Chrysler*, 999 N.E.2d 446, 450 (Ind. Ct. App. 2013) (quoting *Metro. Sch. Dist. v. Carter*, 803 N.E.2d 695, 697 (Ind.Ct.App.2004)). "The period of employment encompasses a reasonable time before and after the employee engages in work." *Burke v. Wilfong*, 638 N.E.2d 865, 868–69 (Ind. Ct. App. 1994). It is well-settled that "[f]or purposes of IWCA coverage, an employee is within his period of employment and at a reasonable place for an employee when in the employer's parking lot directly after leaving work." *Id.* (citing *Lawhead v. Brown*, 653 N.E.2d 527, 529 (Ind. Ct. App. 1995)); *Blaw-Knox Foundry & Mill Mach., Inc. v. Dacus*, 505 N.E.2d 101, 102 (Ind. Ct. App. 1987) ("[E]mployees are doing something incidental to their employment in going and leaving the work place while they are still on their employer's premises."); *Milledge*, 784 N.E.2d at 929 (quoting *Ward v. Tillman*, 179 Ind.App. 626, 386 N.E.2d 1003, 1005 (1979)) ("Accidents resulting from the ingress-egress of employees to a plant within workmen's compensation coverage are an employment-related risk."); *Burke*, 638 N.E.2d at 869 ("[P]arking lots and private drives within the employer's supervision are clearly extensions of the employer's operating premises.").

Determining whether a parking lot is an "employer's" parking lot is non-technical: Indiana courts look back to the United States Supreme Court's opinion in *Bountiful Brick Co. v. Giles*, which held that a worker is "in the course of employment" when "passing, with the express or implied consent of the employer, to or from [] work . . . over the employer's premises, or over those of another in such proximity and relations

as to be *in practical effect* a part of the employer's premises." 276 U.S. 154, 155 (1928), quoted in *Clemans*, 727 N.E.2d at 1089 (emphasis added). Regardless of ownership, a parking lot that is the "most convenient and reasonable means of ingress to and egress from [the employer's] operating premises" is effectively part of those premises. *Glob. Const., Inc. v. March*, 813 N.E.2d 1163, 1167 (Ind. 2004) (quoting *Clemans*, 727 N.E.2d at 1088).

For example, then, a woman struck by a car while crossing a public road between a parking garage and her workplace was injured "in the course of employment," *Clemans*, 727 N.E.2d at 1091; a man injured by a car crash in the parking lot after clocking out for his lunch break was injured "in the course of employment," *Thiellen v. Graves*, 530 N.E.2d 765, 767 (Ind. Ct. App. 1988); a man shot in the parking lot after finishing his shift was injured "in the course of employment," *Blaw-Knox Foundry*, 505 N.E.2d at 102; a man assaulted by strikers upon driving out of a plant after his shift was injured "in the course of employment," *Glob. Const., Inc.*, 813 N.E.2d at 1165; and a woman who "sprained her ankle on the parking lot of her employer while arriving for work at her regularly scheduled time" was injured "in the course of employment," *Milledge*, 784 N.E.2d at 929.

Here, Plaintiffs allege that the victims were killed in the FedEx parking lot while each was either just arriving or just leaving work at a shift change. (Pls.' Amd. Compl. ¶¶ 89–93, ECF No. 16.) Those circumstances are well within the broad, non-technical understanding of "course of employment" used by Indiana courts, as described above. The time of the injury was within minutes of starting or stopping

12

work; the place was the workplace parking lot; the circumstance was the ingress-egress of a work shift change. All alleged facts tie the injuries to work: the natural conclusion, then, is that the injuries were "in the course of employment."

Plaintiffs, hoping to evade this conclusion, allege that the parking lot was "off of . . . a public road," that "employees were not required to park" there, and that there were "no gates" and no "warning signs about the area being reserved for employees." (*Id.* ¶¶ 78–79.) The Court is not persuaded. In a warehouse district, buildings are far apart. There is no need for gates, signs, or barriers: distance and emptiness are deterrence enough. Each building has its own parking lot, which serves that building alone. And those parking lots have no independent existence; they are referred to according to their appurtenant building. Plaintiffs in their pleadings describe this lot as "the parking area adjacent to the 8951 Mirabel Road Ground Package facility"—in ordinary talk, though, it is the FedEx parking lot. No one believes it has any other purpose.

Finally, the Court notes that Plaintiffs run themselves into a dilemma on this issue: if the parking lot is in FedEx's control, then their claims are "in the course of employment" and so covered by the Worker's Compensation Act. But if the parking lot is not under FedEx's control, then FedEx can hardly be liable for failing to prevent the shooting there. Plaintiffs would need it both ways to prevail in this Court; they cannot have it so.

The Court concludes that Plaintiffs have alleged injuries occurring "in the course of employment." And, because of the positional risk doctrine, those injuries also "arise

out of employment." The second and third elements are met to make this a Worker's Compensation Act claim.

## IV. Conclusion

FedEx, despite its intra-corporate intricacies, is plausibly alleged to do business in Indiana; it is for the purposes of this motion within the personal jurisdiction of the Court. Its motion, (ECF No. 23), is therefore **denied in such part** as is brought under Rule 12(b)(2).

This case, however, is as pleaded within the exclusive scope of the Indiana Worker's Compensation Act: the injuries for which Plaintiffs seek redress allegedly "occurred by accident arising out of and in the course of employment." *Sims*, 782 N.E.2d at 349–50. And, because the Indiana Worker's Compensation Board has exclusive jurisdiction over the Act, this Court may not grant any relief on Plaintiffs' claims against FedEx. FedEx's Rule 12(b)(6) motions are therefore **granted in relevant part**, (ECF No. 23), and fully **granted**, (ECF No. 38).

The Court has considered Plaintiff's Motion Requesting Oral Argument, (ECF No. 60), but finds oral argument unnecessary here; that motion is **denied.**

Plaintiffs' claims against FedEx are **dismissed without prejudice** to allow Plaintiffs to refile before the appropriate tribunal. Although this dismissal is under Rule 12(b)(6) for the technical reasons sketched briefly above, it is in essence a jurisdictional dismissal; the Court does not believe further amending the Complaint would be fruitful.

14

The clerk is **directed to terminate** Defendants FedEx Corporation, FedEx Ground Package System, Inc., Federal Express Corporation, and FedEx Corporate Services, Inc. from the docket.

Defendant Securitas Security Services did not file a motion to dismiss and has since filed an Answer in this case. This Order does not dismiss, or indeed address, any claims between Plaintiffs and Securitas.

**SO ORDERED.**

Date: 10/17/2022

*James R. Sweeney*
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by CM/ECF to registered counsel of record.